OPINION
{¶ 1} Defendant-appellant Shawn D. Arnold appeals his conviction and sentence for two counts of murder, two counts of felonious assault, one count of improper discharge of a firearm, one count of having a weapon while under disability, one count of tampering with evidence, and six separate gun specifications.
 {¶ 2} On November 22, 2006, Arnold was indicted on the following charges: Count I, *Page 2 
murder (purposeful), in violation of R.C. § 2903.02(A) (firearm specification); Count II, murder (proximate result), in violation of R.C. § 2903.02(B) (firearm specification); Count III, felonious assault (serious physical harm), in violation of R.C. § 2903.11(A)(1) (firearm specification); Count IV, felonious assault (deadly weapon), in violation of R.C. § 2903.11(A)(2) (firearm specification); Count V, improper discharge of a firearm, in violation of 2923.162(A)(3)/(C)(4) (firearm specification); Count VI, having a weapon while under disability, in violation of R.C. 2923.13(A)(2); and Count VII, tampering with evidence, in violation of R.C. § 2921.12(A)(1) (firearm specification). Arnold was arraigned on November 28, 2006, stood mute, and the trial court entered a not guilty plea on his behalf.
 {¶ 3} Arnold filed a motion to suppress on December 15, 2006. A hearing was held on said motion on March 5, 2007. The trial court overruled Arnold's motion to suppress from the bench, but the trial court did not file its decision and entry expressly overruling the motion until May 30, 2007.
 {¶ 4} Following a jury trial which began on June 4, 2007, and concluded on June 6, 2007, Arnold was found guilty of all of the counts in the indictment. On June 27, 2007, the trial court sentenced Arnold to an aggregate sentence of 25 years to life in prison. Arnold filed a motion to file a delayed appeal and notice of appeal with this Court on September 18, 2007. We sustained Arnold's motion in a decision and entry filed on October 10, 2007, and allowed him to proceed with the instant appeal.
 I {¶ 5} The incident which forms the basis for this appeal occurred on the evening of November 12, 2006, when Arnold shot the victim, Sherawn Younge, in front of Younge's *Page 3 
girlfriend's house located at 1514 Hochwalt Avenue in Dayton, Ohio. Younge died later that night of the injuries he sustained as a result of the shooting. At trial, Arnold confessed to shooting Younge twice in the upper body; however, Arnold testified that he acted in self-defense when Younge purportedly threatened him with a gun.
 {¶ 6} Immediately prior to the shooting, Younge picked up his girlfriend, Latosha Gladden, from work, and the two were returning to Gladden's house on Hochwalt Avenue. Younge was driving Gladden's vehicle, and she was sitting in the front passenger seat. Gladden testified that both she and Younge observed Arnold from the inside of the vehicle firing a a handgun behind them as they approached Gladden's residence.
 {¶ 7} Younge parked the vehicle in front of Gladden's house, but before they could exit the vehicle, Arnold approached the driver's side and leaned in the open window. Gladden testified that Arnold said "what's up?" and before Younge could answer, Arnold shot him. As Younge opened the driver's side door and tried to get out of the vehicle, Arnold shot him again. Gladden testified that she exited the vehicle and ran across the street in an effort to elude Arnold, who had now turned his attention to her. Gladden was hiding behind a station wagon when her sister, Selena, appeared at the scene and yelled at Arnold to leave Gladden alone. Arnold left the scene and began quickly walking down the street.
 {¶ 8} As he was attempting to leave the scene, Arnold was observed by Officer Raymond Dine walking in the opposite direction from the area in which the gunshots occurred. Officer Dine ordered Arnold to get on the ground. Arnold was initially uncooperative, but he eventually acquiesced to the officer's demands. In the meantime, Younge, who was critically injured, got back in Gladden's vehicle and attempted to drive himself to the hospital. Officer *Page 4 
Aaron Fraley stopped the vehicle, and he and Officer Dine ordered Younge out at gunpoint. Younge exited the vehicle and collapsed in the middle of the street. While Younge lay waiting for paramedics to arrive, he told the officers that he had been shot by Arnold.
 {¶ 9} While the officers' attention was diverted, Arnold threw his handgun on the roof of a nearby house, where it slid to the ground and was later recovered by the police with traces of Arnold's blood on it. Arnold also attempted to discard his remaining bullets on the ground immediately surrounding him. However, police officers recovered the bullets a short time later. Officer Jason Tipton observed Arnold standing up and ordered him back on the ground, but Officer Dine returned and told Officer Tipton to frisk Arnold and put him in the back of his cruiser.
 {¶ 10} By this time, a crowd had converged on the area where Younge had been shot and now lay dying. After the paramedics arrived and the crowd was under control, Officer Tipton asked Arnold to provide some identification. Arnold told Officer Tipton his first name and social security number. Arnold also stated that he was not involved in the shooting, but Officer Tipton had already received information from Younge and other witnesses that Arnold was the perpetrator. Officer Tipton transported Arnold to the Safety Building where he was questioned further by Detective Doyle Burke and Sergeant Gary White. After executing a written waiver of his Miranda rights, Arnold acknowledged that he and Younge were longtime friends, but he persisted in denying any involvement in Younge's murder.
 {¶ 11} At trial, however, Arnold testified that he shot Younge in self-defense when Arnold was walking to his cousin's house on the evening of November 12, 2006. Arnold testified that when he walked by Gladden's house on Hochwalt Avenue, Younge exited *Page 5 
Gladden's vehicle and threatened Arnold with a handgun. After a heated exchange, Arnold drew his gun and shot Younge twice before Younge could shoot him. Police did not find a handgun in Younge's possession or in the vehicle he was driving.
 {¶ 12} After a jury trial, Arnold was convicted of all of the charges contained in the indictment and sentenced accordingly. It is from this judgment that Arnold now appeals.
 II {¶ 13} Arnold's first assignment of error is as follows:
 {¶ 14} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT OVERRULED THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE AS HE WAS CLEARLY SEIZED PURSUANT TO CASE LAW WHEN HE WAS PLACED IN THE BACK OF THE POLICE CRUISER, AND THE OFFICER ADMITTED ON THE STAND THAT HE DID NOT HAVE PROBABLE CAUSE TO BELIEVE A CRIME HAD BEEN COMMITTED."
 {¶ 15} In his first assignment, Arnold contends that the trial court erred when it overruled his motion to suppress statements he made to Officer Tipton after being detained and ultimately arrested. Arnold argues that statement he made to Joshua Parnell, a corrections officer at the Montgomery County Jail, should also be suppressed. Specifically, Arnold contends that Officers Tipton and Dine lacked a reasonable, articulable suspicion that he had committed a crime or that he was about to commit a crime. Thus, Arnold asserts that it was improper for the officers to detain him in order to conduct an investigatory inquiry.
 {¶ 16} With respect to a motion to suppress, "the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of *Page 6 
witnesses." State v. Hopfer (1996), 112 Ohio App.3d 521, 548,679 N.E.2d 321, quoting State v. Venham (1994), 96 Ohio App.3d 649, 653,645 N.E.2d 831. The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record.State v. Isaac (July 15, 2005), Montgomery App. No. 20662,2005-Ohio-3733, citing State v. Retherford (1994), 93 Ohio App.3d 586,639 N.E.2d 498. Accepting those facts as true, the appellate court must then independently determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. Id.
 {¶ 17} As we recently reiterated in State v. Carter, Montgomery App. No. 21145, 2006-Ohio-2823:
 {¶ 18} "In order to conduct an investigatory stop, police must be able to point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the intrusion. Terry v. Ohio (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889; State v. White (January 18, 2002), Montgomery App. No. 18731. The propriety of an investigative stop must be viewed in light of the totality of the surrounding facts and circumstances. State v.Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489. These circumstances must be viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold. State v. Andrews
(1991), 57 Ohio St.3d 86, 565 N.E.2d 1271. Accordingly, the court must take into consideration the officer's training and experience and understand how the situation would be viewed by the officer on the street. Id" State v. Heard, Montgomery App. No. 19322, 2003-Ohio-906.
 {¶ 19} At the time that the stop occurred, Officer Dine was responding to a report of a disorderly juvenile at some apartments located on Danner Avenue when he heard two gunshots *Page 7 
by someone in the westbound direction of Hochwalt Avenue. When Officer Dine went to investigate the source of the gunshots, he heard two more shots come from the same direction. At this point, Officer Dine observed Arnold quickly walking away from the direction of the gunshots. Officer Dine testified that he believed that Arnold may have been involved in the ongoing disturbance and ordered him to lay down on the ground. Arnold did not immediately comply with Officer Dine's order, but he eventually laid down on the ground.
 {¶ 20} Based on the totality of the circumstances, Officer Dine had an objectively reasonable suspicion that Arnold was involved in the shooting. Officer Dine was responding immediately to multiple gunshots he had just heard when he observed Arnold walking away from the scene of the shooting. Officer Dine had before him facts sufficient to justify a brief investigatory stop to detain and question Arnold concerning his involvement or knowledge of the shooting that had just occurred.
 {¶ 21} Moreover, Officers Dine and Tipton both testified that the scene on Hochwalt Avenue on the night of the shooting was very chaotic. Emotions were running high, and Officer Tipton testified that he initially handcuffed Arnold and placed him in his cruiser for the appellant's own safety and so that he could question Arnold after they were able to bring the situation under control. It was during this time that Officer Tipton learned from the victim, Younge, as well as other witnesses to the shooting, that Arnold was the alleged gunman. At this point, Officer Tipton arrested Arnold and took him downtown for processing. Officer Tipton possessed sufficient probable cause to effectuate Arnold's arrest. Moreover, the record supports the trial court's finding that Parnell, the corrections officer, did not improperly attempt to elicit any incriminating evidence from Arnold during their brief interaction in the jail. Any statements *Page 8 
made by Arnold to Parnell were made voluntarily.[1]
 {¶ 22} In light of the totality of the circumstances, Officer Dine had sufficient facts before him to initiate an investigatory stop of Arnold after observing him attempt to leave the scene of a recent shooting. Additionally, the record establishes that Officer Tipton had probable cause to detain and eventually arrest Arnold. Thus, the trial court did not err when it overruled Arnold's motion to suppress.
 {¶ 23} Arnold's first assignment of error is overruled.
 III {¶ 24} Arnold's second assignment of error is as follows:
 {¶ 25} "THE JURY'S VERDICT OF CONVICTING APPELLANT OF TWO COUNTS OF MURDER, TWO COUNTS OF FELONIOUS ASSAULT, IMPROPER DISCHARGE OF A FIREARM, AND TAMPERING WITH EVIDENCE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 26} In his second assignment, Arnold argues that his convictions for murder, felonious assault, improper discharge of a firearm, and tampering with evidence are against the manifest weight of the evidence. Arnold asserts that the manifest weight of the evidence clearly demonstrated that he acted in self-defense when he shot Younge on the evening of November 12, 2006. Thus, Arnold argues that his all of his convictions, with the exception of having a weapon while under disability, should be reversed.
 {¶ 27} A claim that a jury verdict is against the manifest weight of the evidence involves *Page 9 
the following test: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. McKnight, 107 Ohio St.3d 101,112, 837 N.E.2d 315,2005-Ohio-6046.
 {¶ 28} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. State v.DeHass (1967), 10 Ohio St.2d 230, 231, 227 N.E.2d 212. "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness."State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288.
 {¶ 29} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict.State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 30} We conclude that Arnold's conviction is not against the manifest weight of the evidence. The credibility of the witnesses and the weight to be given their testimony are matters for the jury to resolve. Arnold presented only minimal evidence in the form of his own *Page 10 
testimony that he acted in self-defense. The jury did not lose its way simply because it chose to believe the State's witnesses, including the eyewitness testimony of Latosha Gladden, Younge's girlfriend, who was in the vehicle with Younge when Arnold shot him. It should be noted that although Arnold testified that Younge threatened him with a gun, no weapon was ever found on Younge's person or in the vehicle in which he was traveling. In fact, the only weapon recovered from the scene was the .38 caliber revolver Arnold used to shoot Younge. Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against a conviction, or that a manifest miscarriage of justice has occurred.
 {¶ 31} Arnold's second assignment of error is overruled.
 IV {¶ 32} Arnold's third and final assignment of error is as follows:
 {¶ 33} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SENTENCED MR. ARNOLD TO SERVE THE SENTENCE FOR HIS MURDER CONVICTION CONSECUTIVE TO THE SENTENCES FOR THE OTHER CONVICTIONS WHEN IT WAS CLEAR THAT HE WAS REMORSEFUL."
 {¶ 34} In his final assignment, Arnold contends that the trial court abused its discretion when it sentenced him to an aggregate sentence of 25 years to life in prison. Primarily, Arnold argues that the trial court was aware the he was remorseful for his conduct. Thus, according to Arnold, the trial court abused it discretion by not imposing the minimum sentence because he "did not deserve to be sentenced with anything greater than the minimum."
 {¶ 35} It should be noted that pursuant to the Ohio Supreme Court's holding in State v. Foster, 109 Ohio St.3d 1, 845 N.E.2d 470,2006-Ohio-856, the trial court was not required to *Page 11 
make any findings on the record in order to support the imposition of Arnold's sentence. Post Foster, trial courts have full discretion to impose any sentence within the statutory range and are no longer required to make findings or give their reasons for imposing more than the minimum sentences.
 {¶ 36} The evidence adduced at trial established that Arnold shot his "best friend," Sherawn Younge, in retaliation for Younge's alleged affair with Arnold's fiancee. After fatally wounding Younge, Arnold pursued Latosha Gladden ostensibly with the intention to shoot her as well. Arnold, however, was deterred from that course of action by Gladden's sister who yelled at him to leave Gladden alone. After being arrested, Arnold proceeded to deny any involvement in the murder of Younge until trial when he chose to argue that he acted in self-defense even though no weapon was found on Younge or in the vehicle he was traveling in. Additionally, the record established that Arnold had a prior felonious assault conviction in 1993, as well as a conviction for aggravated vehicular assault in 2003. Clearly, the trial court had before it sufficient evidence to justify any sentence it decided to impose within the correct statutory range.
 {¶ 37} Arnold's third and final assignment of error is overruled.
 V {¶ 38} All of Arnold's assignments of error having been overruled, the judgment of the trial court is affirmed.
FAIN, J. and GRADY, J., concur.
Copies mailed to:
Carley J. Ingram Shawn P. Hooks Hon. A. J. Wagner
[1] It is worthy of note that the only statements that Arnold argues should be suppressed were those in which he repeatedly denied any involvement in the shooting. *Page 1