OPINION
{¶ 1} On August 4, 2004, Defendant, Anthony Carter, and an unidentified accomplice forced their way into the home of Marie Guinn and her son Robert, at 428 Briarwood Avenue, Apartment E, in Dayton. Defendant was armed with a handgun, and he demanded money from the Guinns. During the course of this incident, Defendant shot Marie Guinn in the head.
 {¶ 2} On August 7, 2004, Defendant snatched the purses carried by three women in separate incidents that took place over a four hour time period in a two block area near Radio Road and North Smithville Road, in Dayton. The description of the perpetrator of each of these robberies was a young black male wearing a white T-shirt and dark pants.
 {¶ 3} Later that day, while investigating one of the purse snatchings, Dayton police officer Shana Hamby saw Defendant walking away from the area toward which the victim of the most recent of those crimes had seen the perpetrator run. Defendant matched the description of the robber: a young black male wearing a white T-shirt and black jeans. Suspecting that he was the young man who had committed the three purse snatchings, Officer Hamby stopped Defendant to investigate. She had already detained in her police cruiser another young man who matched the perpetrator's description.
 {¶ 4} While patting Defendant down for weapons, Officer Hamby observed credit cards inside Defendant's pocket. Because of his young age, that caused her to suspect that he was the robber who had snatched the three purses. Officer Hamby decided to place Defendant in the rear of her police cruiser while investigating her suspicions further, but Defendant pulled away from Officer Hamby and fled.
 {¶ 5} A foot chase ensued, which ended after Defendant ran into his mother's residence at 429 N. Cherrywood Avenue, Apartment G. Defendant's mother gave police consent to enter her apartment to apprehend Defendant. Police found him hiding under a bed. He was wearing different clothing than he had on when Officer Hamby encountered him. Defendant was arrested and taken to the Montgomery County juvenile detention facility, from which he later escaped. He was apprehended two days later in Piqua.
 {¶ 6} As a result of the incident involving the Guinns, Defendant was indicted on one count of aggravated burglary, R.C.2911.11(A)(2), two counts of aggravated robbery, R.C.2911.01(A)(1), and two counts of attempted murder, R.C.2923.02(A) and 2903.02(A) and (B). A firearm specification was attached to each of these charges. As a result of the purse snatchings, Defendant was charged with three counts of robbery, R.C. 2911.02(A)(3). Defendant was also charged with escape, R.C.2921.34(A)(1) and (C)(2)(a), as a result of breaking juvenile detention.
 {¶ 7} Defendant filed a motion to suppress evidence, which the trial court overruled after a hearing. Prior to trial on the charges involving the Guinns, Defendant pled no contest to the escape charge and was found guilty by the trial court. A jury subsequently found Defendant guilty of all charges and specifications relating to the Guinns. Thereafter, Defendant pled guilty to the three robbery charges relating to the purse snatchings. The trial court sentenced Defendant to a combination of concurrent and consecutive prison terms totaling twenty-one years.
 {¶ 8} Defendant timely appeals to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
 {¶ 9} "THE TRIAL COURT ERRED TO THE DEFENDANT-APPELLANT'S PREJUDICE WHEN IT OVERRULED THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS."
 {¶ 10} In reviewing a trial court's decision on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. Accepting those facts as true, the court of appeals then independently determines, as a matter of law and without deference to the trial court's conclusions, whether those facts satisfy the applicable legal standard. State v.Satterwhite (1997), 123 Ohio App.3d 322.
 {¶ 11} Defendant presents several, separate contentions in support of the error he assigns, which are set out below.
A. The trial court erred in finding that Officer Hamby had reasonable suspicion to believe that the Defendant-Appellant had committed a crime when she detained him on August 7, 2004.
 {¶ 12} In State v. Heard (Feb. 28, 2003), Montgomery App. No. 19322, 2003-Ohio-906, this court observed:
 {¶ 13} "In order to conduct an investigatory stop, police must be able to point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the intrusion. Terry v. Ohio (1968),392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889; State v. White
(January 18, 2002), Montgomery App. No. 18731. The propriety of an investigative stop must be viewed in light of the totality of the surrounding facts and circumstances. State v. Bobo (1988),37 Ohio St.3d 177, 524 N.E.2d 489. These circumstances must be viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold.State v. Andrews (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271. Accordingly, the court must take into consideration the officer's training and experience and understand how the situation would be viewed by the officer on the street. Id." Id. at ¶ 14.
 {¶ 14} Shortly after the third purse snatching occurred, Officer Hamby encountered Defendant. Officer Hamby was investigating that third purse snatching, and was aware that all three purse snatchings occurred in less than four hours in a two block area around Radio Road and N. Smithville Road. Defendant's appearance, a young black male wearing a white T-shirt and dark pants, matched the description of the suspect in all three purse snatchings. Moreover, Defendant was seen coming from the area toward which the third victim had seen the perpetrator flee. When the totality of these facts and circumstances are viewed through the eyes of Officer Hamby, and understood as Hamby reasonably would view them in relation to her investigation, they constitute sufficient reasonable suspicion of criminal activity to justify an investigative stop. State v. Wilson (November 7, 1997), Montgomery App. No. 16292.
 {¶ 15} Defendant complains that merely walking in close proximity to where the crimes occurred and being attired in clothing that resembles the clothing worn by the perpetrator are innocent acts that do not give rise to a reasonable suspicion of criminal activity. While certain factors when viewed separately can appear innocent, taken together they may warrant further investigation. Heard, supra. Moreover, it is the very essence of Terry to permit officers to briefly detain an individual for investigation in order to resolve ambiguity in their conduct.Terry, supra. Officer Hamby's investigative stop and detention of Defendant was supported by a reasonable, articulable suspicion of criminal activity, and did not violate Defendant's Fourth Amendment rights.
B. The trial court erred in finding that Officer Hamby had reasonable fear for safety to conduct a Terry pat-down search of the Defendant-Appellant.
 {¶ 16} Even when an investigatory stop and detention of a suspect is justified, it does not necessarily follow that a frisk for weapons is also warranted. State v. Lynch (June 6, 1988), Montgomery App. No. 17028; State v. Mickey (June 29, 1990), Montgomery App. No. 11582. A patdown search for weapons requires reasonable grounds to believe that the suspect is armed and dangerous. Terry; State v. Andrews (1991), 57 Ohio St.3d 86,89. The officer need not be absolutely certain that the individual is armed. Rather, the issue is whether a reasonably prudent person in those circumstances would be warranted in the belief that his safety or the safety of others was in danger.Terry.
 {¶ 17} There is no basis in the record to find that Officer Hamby reasonably suspected that Defendant was armed and dangerous. However, she had decided to place Defendant in her police cruiser while completing her investigation, and for that purpose was authorized to perform a weapons pat-down. State v.McCaulley, 161 Ohio App.3d 568, 2005-Ohio-2864. Defendant's reliance on State v. Lozada, 92 Ohio St.3d 74, 2001-Ohio-149, is misplaced. Lozada involved a routine traffic stop, not an investigation of felonies in which a suspect who is detained might decide to flee, as Defendant subsequently did. Finally, even if Officer Hamby lacked a reasonable basis to perform a weapons pat-down, she seized no evidence in that process that could be suppressed.
C. The trial court erred in finding that Officer Hamby (and other officers) had probable cause to conduct a warrantless arrest of the Defendant-Appellant.
 {¶ 18} Defendant argues that he was illegally placed under arrest when Officer Hamby attempted to handcuff him prior to placing him inside her police cruiser, while she investigated whether he was involved in committing the three robberies that morning, and that his arrest was invalid because it was not supported by probable cause.
 {¶ 19} Without question, Officer Hamby's investigatory stop and detention of Defendant constituted a seizure for Fourth Amendment purposes. State v. Cook (Sept. 10, 2004), Montgomery App. No. 20427, 2004-Ohio-4793; Terry, supra. However, for a seizure to constitute an arrest there must be
(1) an intent to arrest, (2) a seizure made under real or pretended authority, (3) accompanied by an actual or constructive seizure or detention, (4) that is so understood by the person arrested. Cook, supra, quoting State v. Barker (1978),53 Ohio St.2d 135.
 {¶ 20} Handcuffing a suspect in the course of an investigative detention does not necessarily turn that investigative detention into an arrest, so long as handcuffing is reasonable under the circumstances; for instance, to maintain the status quo and prevent flight. See: State v. Payne (May 4, 1994), Montgomery App. No. 13898.
 {¶ 21} Officer Hamby was investigating whether Defendant was the person who committed three robberies in that area in a short period of time that morning, all of which involved the use of force and violence and flight by the perpetrator. Defendant matched the physical description of the perpetrator in all three robberies, and he was coming from the area toward which the perpetrator reportedly had fled.
 {¶ 22} In addition to Defendant, Officer Hamby was investigating another person seated in her police cruiser as a possible suspect in these same robberies. Officer Hamby was alone at that time with Defendant and the other suspect. Officer Hamby testified that she decided to cuff Defendant "just for my safety," and that she was not arresting him at that time.
 {¶ 23} We note that Officer Hamby never actually handcuffed Defendant, because he pulled away from her and fled during that process. In any event, although it is a close call, we conclude that the trial court could reasonably determine that handcuffing Defendant while Officer Hamby investigated his possible involvement in these three robberies was reasonable under the circumstances to maintain the status quo, and was not intended to effect an arrest at that time and did not transform this investigative detention into an arrest.
 {¶ 24} A warrantless arrest for a felony not committed in the officer's presence must be supported by probable cause. UnitedStates v. Watson (1976), 423 U.S. 411, 96 S.Ct. 820,46 L.Ed.2d 598. Probable cause exists when the arresting officer has sufficient information from a reasonably trustworthy source to warrant a prudent person in believing that the suspect has committed or was committing an offense. State v. Cranford
(April 15, 2005), Montgomery App. No. 20633, 2005-Ohio-1904. Whether probable cause exists is determined from the totality of the facts and circumstances. Id.
 {¶ 25} Defendant argues that his arrest at his mother's residence was not supported by probable cause and was therefore invalid. Earlier, when Officer Hamby had attempted to handcuff Defendant before placing him inside her police cruiser, he broke away from her grasp and fled on foot. A chase ensued. Police pursued Defendant to 429 N. Cherrywood Avenue, Apartment G, the home of defendant's mother. After she gave her voluntary consent, police entered that residence and arrested Defendant for robbery.
 {¶ 26} Defendant's flight from Officer Hamby clearly heightened her suspicions regarding his involvement in these robberies. Flight is the ultimate act of evasion, and while it is not necessarily indicative of wrongdoing, it is certainly suggestive of that. Illinois v. Wardlow (2002), 528 U.S. 119,120 S.Ct. 673, 145 L.Ed.2d 570. Furthermore, when Defendant was located by police inside his mother's residence after he fled from Officer Hamby, he was hiding under a bed and he was wearing different clothing than he had on when Officer Hamby initially encountered him shortly before, clothing that no longer matched the description of the suspect.
 {¶ 27} The totality of these facts and circumstances would warrant a prudent person to believe that Defendant committed the three robberies. Defendant's arrest at his mother's residence was supported by probable cause and did not violate his Fourth Amendment rights.
D. The trial court erred in failing to suppress all evidence obtained by police because officers conducted a warrantless entry into the Defendant-Appellant's home to effectuate his arrest.
 {¶ 28} The evidence presented at the suppression hearing demonstrates that the residence police entered was not Defendant's home but the home of his mother. Defendant admitted to Detective Martinez that his mother had kicked him out, that he was no longer living with his mother, and that he was living in a different apartment in that complex with another woman, Melissa Horton. Accordingly, Defendant lacked any reasonable expectation of privacy in his mother's residence and he therefore did not have standing to challenge the warrantless police entry into that residence. State v. Williams, 73 Ohio St.3d 153, 1995-Ohio-275,Rakas v. Illinois (1978), 439 U.S. 128, 99 S.Ct. 421,58 L.Ed. 2d 387.
 {¶ 29} In any event, a warrantless police entry of a home is presumptively unlawful and the State bears the burden to establish the lawfulness of such an entry. State v. Cooper
(Oct. 28, 2005), Montgomery App. No. 20845, 2005-Ohio-5781. The State did that here. The testimony by various officers indicates, and the trial court found, that Defendant's mother voluntarily consented to police entering her residence to arrest Defendant. The trial court found that testimony by Defendant's mother at the hearing to the contrary lacked credibility. Consent to search is a well recognized exception to the Fourth Amendment's warrant requirement. Schneckloth v. Bustamonte (1973), 412 U.S. 218,93 S.Ct. 2041, 36 L.Ed.2d 854; State v. Posey (1988),40 Ohio St.3d 420, 427. Defendant's Fourth Amendment rights were not violated by the warrantless police entry into his mother's residence.
E. The trial court erred in failing to suppress and exclude the in-court identification testimony of Mr. Robert Guinn because the photo array compiled by Officer Martinez was unnecessarily suggestive and Mr. Guinn's identification of the Defendant-Appellant was unreliable as against the due process clause.
 {¶ 30} When a witness identifies a suspect prior to trial, due process requires a court to suppress evidence of the witness's prior identification if the confrontation was unduly suggestive of the suspect's guilt and the identification was unreliable under the totality of the circumstances. State v.Murphy, 91 Ohio St. 3d 516, 534, 2001-Ohio-112.
 {¶ 31} The defendant must first show that the identification procedure was unduly suggestive. If the defendant meets that burden, the court must then consider whether the identification, viewed under the totality of the circumstances, is reliable despite its suggestive aspects. State v. Wills (1997),120 Ohio App.3d 320, 324. If the pretrial confrontation procedure was not unduly suggestive, any remaining questions as to reliability go to the weight of the identification, not its admissibility, and no further inquiry into the reliability of the identification is required. Id., at 325; State v. Beddow (March 20, 1998), Montgomery App. Nos. 16197, 16198.
 {¶ 32} Defendant argues that his physical features and appearance is not similar to the males depicted in the other photographs, and that his photograph has a lighter colored background than the others, causing it to stand out. The photospread consists of six subjects, all young-looking black males with short hair, moustaches, and full lips. While there may be some differences in skin tones, the instructions for viewing the photospread that Detective Martinez read to Robert Guinn indicate that photographs may not always depict the true complexion of a person.
 {¶ 33} As for the different backgrounds in the photographs, Defendant's is white or light gray, two others are blue, and the remaining three are olive color. These differences are not suggestive of which photograph depicts the perpetrator. The instructions for viewing the photospread indicate that the witness should pay no attention to differences in the type or style of photographs. Furthermore, a photo array is not unduly suggestive due solely to different backgrounds. See: State v.Nelson (June 19, 2003), Cuyahoga App. No. 81558, 2003-Ohio-3219;State v. Browner (May 31, 2001), Scioto App. No. 99CA2688, 2001-Ohio-2518.
 {¶ 34} Because Defendant was a juvenile, he did not have a photograph in the computerized database used by police to create photo arrays. Detective Martinez used a photograph she took of Defendant on August 7, 2004, shortly after his arrest, and using his physical features the computer generated photographs of young men similar in appearance. Detective Martinez arranged them into a photographic lineup. We have previously held that a computerized method of creating photospreads avoids most potential unfairness and almost any claim that the lineup was suggestive. State v. Beckham (July 18, 2003), Montgomery App. No. 19544, 2003-Ohio-3837; State v. Beddow (March 20, 1998), Montgomery App. Nos. 16197 and 16198.
 {¶ 35} Furthermore, the manner in which this photographic lineup was presented to Robert Guinn was not suggestive. The record shows that Detective Martinez read the instructions for viewing the photospread to Guinn, and did not suggest or in any way influence Guinn as to whom he should select. Guinn identified the person in photograph number 2, Defendant, as the person who invaded his home, demanded money, and shot his mother.
 {¶ 36} This photographic lineup and the manner in which it was presented to the eyewitness was not unduly suggestive. Accordingly, there is no need to further inquire into the reliability of the identification by Guinn. Beckham, supra. The trial court did not err in refusing to suppress the pretrial identification.
 {¶ 37} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 38} "THE TRIAL COURT ERRED TO THE DEFENDANT-APPELLANT'S PREJUDICE WHEN IT OVERRULED HIS MOTION FOR ACQUITTAL AND THE DEFENDANT-APPELLANT'S CONVICTION RESTS UPON LEGALLY INSUFFICIENT EVIDENCE."
 {¶ 39} When considering a Crim.R. 29 motion for acquittal, the trial court must construe the evidence in a light most favorable to the State and determine whether reasonable minds could reach different conclusions on whether the evidence proves each element of the offense charged beyond a reasonable doubt.State v. Bridgeman (1978), 55 Ohio St.2d 261. The motion will be granted only when reasonable minds could only conclude that the evidence fails to prove all of the elements of the offense.State v. Miles (1996), 114 Ohio App.3d 738.
 {¶ 40} A Crim.R. 29 motion challenges the legal sufficiency of the evidence. A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins,
(1997), 78 Ohio St.3d 380. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus ofState v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 41} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 42} In order to prove that Defendant was one of the perpetrators who committed the crimes against the Guinns, the State presented Robert Guinn's pretrial identification of Defendant as well as Guinn's in-court identification of Defendant at trial. The State also offered evidence of a palm print lifted from inside the door frame of Guinn's apartment that was determined to belong to Defendant to the exclusion of all other people.
 {¶ 43} With respect to the identifications of Defendant, we previously determined that the pretrial identification procedure used by police was not unfairly suggestive. His resulting identification of Defendant was not based upon his opportunity, or lack thereof, to see Defendant as he crouched down by the door inside the dark apartment during the commission of these crimes. Rather, Guinn's identifications were based upon his ability to see Defendant standing in the well-lighted hallway outside the apartment just before Defendant kicked in the door and forced his way into the apartment. Guinn had opened the door slightly in response to hearing a knock on the door and voices outside claiming to be police officers. Although Defendant was wearing a bandana as a mask, it covered only the bottom portion of his face, and Guinn looked directly at Defendant's face from only one foot away through the partially open door.
 {¶ 44} The Guinns had never seen Defendant before these crimes occurred, and he had never been inside the Guinns'apartment before this incident. Fingerprints corresponding to those of the accused are sufficient proof of his identity to sustain his conviction where the circumstances show that such prints, found at the scene of the crime, could only have been impressed at the time of the commission of the crime. State v.Miller (1977), 49 Ohio St.2d 198.
 {¶ 45} Viewing the evidence in this case that identifies Defendant as one of the perpetrators of the offense against the Guinns in a light most favorable to the State, as we must, a rational trier of facts could find all of the essential elements of the offenses, including Defendant's identity as one of the perpetrators, proved beyond a reasonable doubt. Defendant's convictions are supported by legally sufficient evidence.
 {¶ 46} Defendant also challenges the admission of evidence of latent fingerprints discovered at the crime scene on the door and door frame that were not of sufficient quality to have any value for comparison purposes. Defendant argues that admitting these unknown prints into evidence was improper and prejudicial, because it suggested to the jury that the prints belonged to Defendant.
 {¶ 47} State's Exhibit 24 consists of two latent fingerprint cards containing all of the latent finger and palm prints lifted by police evidence technician, Scott Morgan, from the area around the Guinns'apartment door. Only the palm print was of sufficient quality to be used for comparison purposes, and it was analyzed by latent print examiners and compared to Defendant's known prints. The entire exhibit, however, was admitted into evidence without any objection from Defendant. Accordingly, we can review the trial court's evidentiary ruling only for "plain error."State v. Wickline (1990), 50 Ohio St.3d 114. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise. State v.Long (1978), 53 Ohio St.2d 91.
 {¶ 48} Admission of the latent print card containing the palm print used for comparison with Defendant's known prints as well as three fingerprints that were inadequate for comparison purposes does not constitute plain error. Clarence Hudson, a latent print examiner, testified at trial that only the palm print was of sufficient quality to be compared to Defendant's known prints, which he did. There is nothing in the record which suggests that the three latent prints that were inadequate for comparison purposes belonged to Defendant. In any event, because Defendant's presence at the crime scene was clearly proved by the presence of his right palm print on the inside of the Guinns' door frame, we cannot say that but for the admission of the three unknown latent prints that were inadequate for comparison purposes, Defendant would have been acquitted. Plain error has not been demonstrated.
 {¶ 49} The second assignment of error is overruled. The judgment of the trial court will be affirmed.
Brogan, J. and Donovan, J., concur.