[Cite as *State v. Smith*, 2014-Ohio-5443.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 14AP-33 |
| v. | : | (C.P.C. No. 13CR-2088) |
| Dawon M. Smith, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 11, 2014

*Ron O'Brien,* Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

*Richard Cline & Co., LLC*, and *Richard A. Cline*, for appellant.

APPEAL from the Franklin County Court of Common Pleas.

BROWN, J.

{¶ 1} This is an appeal by defendant-appellant, Dawon M. Smith, from a judgment of the Franklin County Court of Common Pleas convicting him of having a weapon while under disability.

{¶ 2} On April 18, 2013, appellant was indicted on one count of aggravated burglary, in violation of R.C. 2911.11, with a firearm specification, two counts of aggravated robbery, in violation of R.C. 2911.01, each with firearm specifications, two counts of kidnapping, in violation of R.C. 2905.01, each with firearm specifications, one count of felonious assault, in violation of R.C. 2903.11, with a firearm specification, and one count of having a weapon while under disability, in violation of R.C. 2923.13.

{¶ 3} The matter came for trial beginning November 12, 2013, with Counts 1 through 6 tried before a jury, while Count 7 (having a weapon while under disability) was tried to the court. At trial, the first witness for the state was Columbus Police Officer James Schiering, II. On the evening of December 18, 2011, Officer Schiering responded to a report of a robbery at an apartment located at 558 Riverview Drive, Columbus. When the officer arrived, Lori Turner and Shavonne Caudill were inside the residence, "extremely upset, [and] crying." (Nov. 12, 2013 Tr. 33.)

{¶ 4} Turner and Caudill gave the officer descriptions of two men. One of the suspects "was a male black about six foot, * * * 180 pounds, wearing a black puffy coat with fur around the hood with jeans." (Nov. 12, 2013 Tr. 33.) The second suspect "was a male black, also about six foot, 180 pounds, * * * wearing gray sweats and a white T-shirt." (Nov. 12, 2013 Tr. 33.) The second suspect "had long braids." (Nov. 12, 2013 Tr. 34.) The men had entered the residence and taken "a banding bottle 120-count Oxycodone * * * along with a 32-inch Sony flat screen." (Nov. 12, 2013 Tr. 34.) The women indicated that "[s]uspect number two called suspect number one Cody." (Nov. 12, 2013 Tr. 37-38.) They also reported that "[s]uspect number one" had a firearm. (Nov. 12, 2013 Tr. 38.)

{¶ 5} Caudill, age 29, testified that she resided with her friend, Turner, at 558 Riverview Drive, Apartment H. On the evening of December 18, 2011, Caudill and Turner were cooking food at the apartment; they left the apartment door cracked because of the heat from cooking. Caudill and Turner were sitting on a couch when appellant and another man "came through our door." (Nov. 12, 2013 Tr. 48.) The other individual, who entered first, had a weapon and said: "Bitch, give me all your money and all your pills." (Nov. 12, 2013 Tr. 48.)

{¶ 6} Caudill had never met either individual before. The other man "[j]ust kept saying: Give me all your money, give me all your pills." (Nov. 12, 2013 Tr. 51.) The man grabbed Turner "by her hoodie" and took her into the bedroom. (Nov. 12, 2013 Tr. 51.) He then began "rummaging through" Turner's purse. (Nov. 12, 2013 Tr. 52.) The man also began looking inside of dresser drawers. Turner told the man: "I don't have any money, I don't have any money." (Nov. 12, 2013 Tr. 55.) At one point, the man hit Turner with the weapon and she fell to the ground. Turner kept medicine in the room, and the

man began picking up medicine bottles; he then disconnected a big screen television in the bedroom.

{¶ 7}   During these events, appellant was standing near the couch where Caudill was seated. Appellant "said 'don't move' at that time." (Nov. 12, 2013 Tr. 53.) Caudill was scared and remained seated on the couch. The other man eventually came out of the bedroom with the television and began looking at another television in the living room. Appellant said to the man: "Come on, Cory Bro, * * * leave these girls something. Don't take everything from them." (Nov. 12, 2013 Tr. 57.) The two men then left the apartment. Caudill and Turner phoned the police and later spoke with a detective who showed them a photo array. Caudill identified appellant's picture from the array. At trial, Caudill identified appellant as one of the men who entered her residence that evening.

{¶ 8}   Turner testified that she and her roommate, Caudill, were sitting on the couch watching television on the evening of December 18, 2011; the door was slightly open because they had been cooking and it was warm inside the apartment. Two men, who Turner had never met before, entered through the front door. The first man had a weapon, and the other individual, who Turner identified at trial as appellant, "stood at the end of our couch." (Nov. 12, 2013 Tr. 78.)

{¶ 9}   The first man came over to Turner and wanted to know where she kept her medicine. Turner suffers from medical conditions that require her to take various prescription drugs, including pain medications such as Oxycodone and Amoxicillin. The man grabbed Turner by her sweatshirt and pointed the weapon "at me and put it at the back of my head and cocked it." (Nov. 12, 2013 Tr. 81.) The man told appellant "to stand there and not let [Caudill] move." (Nov. 12, 2013 Tr. 83.) Caudill was sitting on the couch crying, and appellant was "[s]tanding over top of her." (Nov. 12, 2013 Tr. 83.)

{¶ 10} Turner went into the bedroom with the other man, and he "wanted to know where my medicine was, and he took all my medicine, and he * * * wanted to know if there was any money." (Nov. 12, 2013 Tr. 84.) Turner indicated she did not have any money, and the man hit her with the pistol, knocking her to the floor. The man "picked me back up and he kept screaming that he was going to shoot me, kill me." (Nov. 12, 2013 Tr. 84.) The man "cleaned off all of the medicine off of the whole top of the dresser," putting the medicine in his pocket. (Nov. 12, 2013 Tr. 84.)

{¶ 11} The man then "yanked" Turner back up and shoved her on the couch, and "told the second gentleman to watch us, and he went back in and took the TV * * * from the top of our dresser." (Nov. 12, 2013 Tr. 85.) The man came out of the bedroom and began to disconnect the television in the living room. At that time, appellant "said: F**k it, let's just get the F out of here." (Nov. 12, 2013 Tr. 87.) The other man then "grabbed the TV and went out of the apartment. And then * * * a minute later you heard him yell: Let's go. And that is when [appellant] took off out the door." (Nov. 12, 2013 Tr. 88.)

{¶ 12} Turner observed a car leave the apartment complex, and the women then phoned the police. They later spoke to a detective. Turner picked out one of the men, Cody Ellison, from a photo lineup. She later picked out appellant's picture from a photographic array.

{¶ 13} Appellant, who had previous convictions for drug possession and carrying a concealed weapon, testified on his own behalf and gave the following account of the events of December 18, 2011. On that date, he drove to a restaurant on Olentangy River Road to meet "Cody." (Nov. 12, 2013 Tr. 112.) Appellant had earlier phoned Cody "and asked him if he knew anyone that was selling any Percocet, Oxycodone pills." (Nov. 12, 2013 Tr. 112.) Appellant did not know where Cody was going, but he followed him in a separate automobile. Appellant gave Cody $50 to purchase "five Percocets 15." (Nov. 12, 2013 Tr. 117.) Appellant followed Cody to the location because "you can't trust people with your money." (Nov. 12, 2013 Tr. 117.) Appellant went up to the apartment at Cody's request.

{¶ 14} Appellant testified that when they arrived at the apartment they were "[g]reeted at the door" by Turner and Caudill. (Nov. 12, 2013 Tr. 119.) Appellant denied that Cody pulled out a gun and demanded pills. Appellant testified that "we walked into the apartment, Cody greeted the people as if he was acquainted with them already, and they all three went to the bedroom while I stood by the door because I'm in an unfamiliar environment." (Nov. 12, 2013 Tr. 120.) After a few minutes, Cody "comes out of the bedroom carrying a TV, and I'm wondering in my mind now I came here to buy prescription pills, not a TV. Now I'm wondering what happened in the bedroom that he came out carrying the TV." (Nov. 12, 2013 Tr. 120.) According to appellant, he finally realized "something had just happened, but I don't know exactly what." (Nov. 12, 2013 Tr.

120.) Appellant testified that when Cody "started to go for the other TV, * * * I left out of the apartment, got in my car and left, because I knew I had just been a part of something, but I didn't know exactly what." (Nov. 12, 2013 Tr. 121.)

{¶ 15} At the close of the state's evidence, appellant's trial counsel made a Crim.R. 29 motion for judgment of acquittal, which the trial court denied. Following the presentation of evidence, the trial court instructed the jury to consider whether appellant was guilty as "a principal offender or as a complicitor or an aider and abettor to any or all counts and the specifications of the indictment." (Nov. 13, 2013 Tr. 153.)

{¶ 16} On November 13, 2013, the jury returned verdicts finding appellant not guilty of Counts 1 through 6. On December 10, 2013, the trial court found appellant guilty of the weapon while under disability charge. Also on that date, appellant entered a guilty plea in two separate cases to fourth-degree felony burglary (common pleas case No. 12CR-3010) and fourth-degree felony failure to appear (common pleas case No. 13CR-1354).

{¶ 17} The trial court conducted a sentencing hearing on January 3, 2014. The court filed an entry on February 4, 2014, reflecting the jury had returned verdicts of not guilty on Counts 1 through 6, and that the court had rendered a guilty verdict as to Count 7. The trial court sentenced appellant to two years incarceration on the charge of having a weapon while under disability, to be served concurrently to appellant's sentence in common pleas case No. 12CR-3010, but consecutive to his sentence in common pleas case No. 13CR-1354.

{¶ 18} On appeal, appellant sets forth the following two assignments of error for this court's review:

> [I.] The jury's not guilty verdicts of Counts 1 through 6 constituted a midtrial acquittal triggering double jeopardy protection against later conviction of the Weapons Under Disability Charge.
>
> [II.] The trial court erred in denying Defendant's Criminal Rule 29 Motion for Acquittal of the Weapons Under Disability charge because insufficient evidence existed to show that Mr. Smith possessed a weapon on December 18, 2011. Alternatively, the Weapons Under Disability conviction was against the manifest weight of the evidence.

{¶ 19} Under the first assignment of error, appellant asserts that the jury verdicts finding him not guilty of the offenses of aggravated burglary, aggravated robbery, and kidnapping constituted a factual finding that precluded his conviction by the trial court for having a weapon while under disability. Appellant argues that the jury's not guilty verdicts on Counts 1 through 6 necessarily entailed a finding that he was not a complicitor or aider and abettor as to those offenses; further, appellant maintains, once the jury made that factual determination, the issue preclusion component of the double jeopardy clause prevented the trial court from engaging in "post-verdict" fact-finding proceedings to reach a different result on that issue.

{¶ 20} In response, the state argues that this case does not involve seriatim prosecutions, but rather a single proceeding before different fact finders pursuant to appellant's request, and that the doctrine of collateral estoppel is inapplicable in the context of a single, multi-count trial. We agree.

{¶ 21} In *Ashe v. Swenson*, 397 U.S. 436 (1970), the United States Supreme Court "primarily set forth" the concept of collateral estoppel. *State v. Cline,* 11th Dist. No. 12-165 (June 17, 1988). The doctrine of collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe* at 443. Thus, the rule in *Ashe* bars successive prosecutions for separate but unrelated offenses "in those situations where the second prosecution requires the relitigation of ultimate factual issues which have been previously resolved against the state and in favor of an accused in an initial prosecution." *Cline.*

{¶ 22} However, the collateral estoppel principle at issue in "successive prosecution cases like *Ashe*" is not applicable in the context of a "single, multi-count trial." *Nesbitt v. Hopkins,* 86 F.3d 118, 120-21 (8th Cir.1996). Rather, "in a single trial of multiple charges, the only relevant question is whether the evidence is constitutionally sufficient to support each count of conviction." *Id.* at 121.

{¶ 23} Here, appellant's attempt to invoke the doctrine of collateral estoppel based on his contention that the verdicts rendered by the jury and trial court are inconsistent is not persuasive. This court has previously held that "[c]onsistency between verdicts on several counts of an indictment is unnecessary where the defendant is convicted on one or

some counts and acquitted on others." *State v. Trewartha,* 165 Ohio App.3d 91, 2005-Ohio-5697, ¶ 15 (10th Dist.) Rather, "[e]ach count of a multi[-]count indictment is deemed distinct and independent of all other counts, and thus inconsistent verdicts on different counts do not justify overturning a verdict of guilt." *Id.*

{¶ 24} Ohio courts have applied the above principles in cases in which a jury has rendered a verdict of acquittal on some charges and a trial court has found a defendant guilty on other charges based on evidence presented in the same criminal proceeding. In *State v. Brown,* 8th Dist. No. 89754, 2008-Ohio-1722, the appellant was charged with attempted murder (with firearm specifications), felonious assault (with firearm specifications), and having a weapon while under disability. All counts were tried to a jury except for the count charging the appellant with having a weapon while under disability, which was tried to the bench. The jury acquitted the appellant of attempted murder and felonious assault, while the trial court found him guilty of having a weapon while under disability.

{¶ 25} On appeal, the appellant challenged his conviction for having a weapon while under disability as inconsistent with the jury's verdict of acquittal as to the charges of attempted murder and felonious assault. In *Brown* at ¶ 27-29, the court rejected that argument, holding in relevant part:

> In Ohio, inconsistency requiring acquittal does not arise out of a jury's inconsistent responses to different counts, but only arises out of inconsistent responses to the same count. * * * This is so because the several counts of an indictment are independent, and a verdict responding to a designated count will be construed in the light of the count designated, and no other. * * * In contrast with civil cases, consistency between verdicts on several counts of a criminal indictment is unnecessary and, where the defendant is convicted on one or some counts and acquitted on others, the conviction will generally be upheld, irrespective of its rational incompatibility with the acquittal.
>
> In *State v. Hunter* (July 23, 1993), Montgomery App. No. 13614, the court found the defendant guilty of having a weapon while under a disability, and the jury was unable to reach a verdict on a separate charge of carrying a concealed weapon. On appeal, the court held that the two offenses contained separate elements; therefore, the verdicts did not present a logical inconsistency. *Id.* The court further noted

that "even had [the defendant] been found not guilty by the jury on the charge of carrying a concealed weapon, that would not require acquittal on the separate charge of having a weapon under disability." *Id.* * * *

Similarly, we do not find that the jury's acquittal on the charges of attempted murder and felonious assault are inconsistent with the trial court's determination of guilt on having a weapon while under a disability. These three offenses are separate charges, each requiring proof beyond a reasonable doubt on a different set of elements * * *.

{¶ 26} This court has similarly found no inconsistency in verdicts returned in a single criminal prosecution in which a trial court found a defendant guilty of having a weapon while under disability despite the fact that the jury failed to return guilty verdicts on the remaining counts. *See State v. Webb,* 10th Dist. No. 10AP-289, 2010-Ohio-6122 (rejecting defendant's double jeopardy/collateral estoppel arguments that jury's inability to reach verdict on improper handling count was inconsistent with trial court's rendering of guilty verdict on charge of having a weapon while under disability); *State v. Page,* 10th Dist. No. 11AP-466, 2012-Ohio-671 (affirming trial court's conviction finding defendant guilty of having a weapon while under disability despite the jury's verdict finding him not guilty of aggravated robbery, attempted murder and felonious assault).

{¶ 27} Here, notwithstanding appellant's claims of inconsistent verdicts, all of the counts in this case were tried as part of a single prosecution, and appellant's contention that the jury verdicts of acquittal precluded his conviction for having a weapon while under disability is not well-taken. Further, as noted under the facts, the verdicts finding appellant not guilty of Counts 1 through 6, but guilty of Count 7, were all journalized by judgment entry filed February 4, 2014.

{¶ 28} Based upon the foregoing, appellant's first assignment of error is overruled.

{¶ 29} Under the second assignment of error, appellant asserts the trial court erred in denying his Crim.R. 29 motion for judgment of acquittal on the basis that the evidence was insufficient to support his conviction for having a weapon while under disability. Appellant also challenges such conviction as against the manifest weight of the evidence.

{¶ 30} In *State v. Martin,* 10th Dist. No. 14AP-189, 2014-Ohio-4447, ¶ 19-20, this court discussed the distinction between sufficiency and manifest weight challenges as follows:

> Crim.R. 29(A) states in part: "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." A motion for acquittal under Crim.R. 29 "challenges the legal sufficiency of the evidence." * * * Further, such motion "is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." * * * In reviewing the "record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.*
>
> In contrast to a sufficiency argument, a reviewing court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact." * * * Rather, an appellate court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

{¶ 31} R.C. 2923.13(A)(3) states in part: "[N]o person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse." R.C. 2923.03(A) defines complicity in part as follows: "No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: (1) Solicit or procure another to commit the offense; (2) Aid or abet another in committing the offense."

{¶ 32} In challenging the sufficiency of the evidence, appellant contends there was no evidence he possessed a firearm; rather, the witnesses all agreed that "Cody" possessed the firearm. Further, appellant asserts, the jury rejected the argument he was complicit

with, or aided and abetted, Cody's possession of a firearm. Appellant maintains that if the evidence was insufficient to prove he was complicit with Cody in the commission of the offenses charged in Counts 1 through 6, the evidence was insufficient to support his conviction for having a weapon while under disability.

{¶ 33} Appellant's sufficiency argument is predicated upon his claim, previously addressed above, that the verdicts are inconsistent. As noted, however, any purported inconsistency between the jury's acquittal on Counts 1 through 6 and the trial court's determination of guilt on the charge of having a weapon while under disability does not warrant reversal under Ohio law. In considering the sufficiency of the evidence, the record indicates that the state presented testimony that appellant and the other individual, "Cody," went to the apartment to obtain prescription drugs. According to the testimony of Turner and Caudill, the two men entered the apartment together. Cody, brandishing a firearm, pointed it at Turner's head and cocked the weapon. At one point, Cody struck Turner in the head with the firearm. Cody told appellant to "not let [Caudill] move." (Nov. 12, 2013 Tr. 83.) During this time, appellant stood over top of Caudill by the couch and told her not to move. The parties stipulated at trial that appellant had previously been convicted of felony possession of cocaine. Here, construing the evidence most strongly in favor of the state, as we are required to do in considering a sufficiency claim, the state presented sufficient evidence by which the trier of fact could have found appellant guilty of having a weapon while under disability.

{¶ 34} Appellant also contends that his conviction for having a weapon while under disability was against the manifest weight of the evidence. Again, appellant points to the jury's acquittal as to the other counts as highlighting the conflict between appellant's version of the events and those described by Turner and Caudill. However, "[t]he trial court and the jury are two independent triers of fact in this case," and "[t]he fact that their conclusions differ is not relevant." *Brown* at ¶ 23.

{¶ 35} In the instant case, in finding appellant guilty, the court specifically noted on the record that it "found the two victims to be persuasive and credible. * * * I did not find the Defendant's version of what happened to be credible at all." (Dec. 10, 2103 Tr. 12.)

{¶ 36} It is within the province of the trier of fact to determine issues of credibility, and the weight to be accorded that testimony. *State v. DeHass,* 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Here, it is clear from the record that the trial court chose to believe the testimony of Caudill and Turner over appellant's version of the events, which the court was entitled to do. Upon review, we do not find that the trier of fact lost its way and created a miscarriage of justice such that the conviction was against the manifest weight of the evidence. Because appellant's conviction is supported by sufficient evidence, and is not against the manifest weight of the evidence, appellant's second assignment of error is overruled.

{¶ 37} Based on the foregoing, appellant's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

TYACK and KLATT, JJ., concur.

_____