[Cite as *State v. Eason*, 2016-Ohio-5516.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 103575

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**RICHARD EASON**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-577863-A

**BEFORE:** Celebrezze, J., McCormack, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** August 25, 2016

**ATTORNEY FOR APPELLANT**

Gerald R. Walton
Spectrum Bldg., Suite 200
6060 Rockside Woods Blvd.
Independence, Ohio 44131


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Janna R. Steinruck
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶1} Defendant-appellant, Richard Eason ("appellant"), brings this appeal challenging his conviction for having weapons while under disability. Specifically, appellant argues that (1) the trial court erred by denying his motion to suppress and (2) his conviction for having weapons while under disability violated his protections against double jeopardy and was inconsistent with the jury's verdict. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶2} On September 1, 2015, Officer Thomas Rini of the Cleveland Heights Police Department was on patrol at approximately 5:00 a.m. when he observed what he perceived to be a suspicious vehicle parked on Greyton Road. The vehicle's engine was running and the driver's side door was ajar. Officer Rini reported the vehicle to dispatch, requested back-up, and approached the vehicle. Officer Rini observed a male, who he later identified as appellant that appeared to be sleeping in the driver's seat. The keys were in the ignition, the vehicle's engine was running, and the vehicle was in park. Officer Rini attempted to determine whether appellant was sleeping or if he needed medical attention. Officer Christopher Wolske arrived on the scene to assist Officer Rini.

{¶3} The officers spent two to three minutes attempting to wake appellant. Appellant eventually woke up, attempted to close the vehicle's door, and stated "I'm good. I'm fine." Officer Rini ordered appellant to step out of the vehicle. Appellant appeared to be disoriented when he exited the vehicle; he was swaying and having a difficult time standing and keeping his balance. Appellant appeared to be confused about where he was. According to Officer Rini, appellant's eyes were watery and he detected an odor of alcohol on his breath. Appellant

informed Officer Rini that he was not asleep and that he was waiting to pick up a friend.

{¶4}　Based upon his observations and his interaction with appellant, Officer Rini decided to administer standardized field sobriety tests. First, Officer Rini administered the one-leg stand test. Officer Rini terminated the test after appellant was unable to comply with his instructions. Second, Officer Rini administered the walk and turn test. Appellant was unable to maintain his balance, and he stepped off of the straight line three times. Furthermore, appellant was unable to keep his arms at his sides, failed to look at his feet, and stopped counting after two steps. Officer Rini terminated the test. Third, Officer Rini administered the horizontal gaze nystagmus test. Officer Rini observed nystagmus in both of appellant's eyes, indicating that appellant may be appreciably impaired.

{¶5}　After administering the field sobriety tests, Officer Rini arrested appellant for operating a vehicle under the influence of alcohol or drugs ("OVI"). The officers conducted a pat-down of appellant and recovered a black iPhone and approximately $529 in cash. The officers ordered appellant's vehicle to be towed and conducted an inventory search of the vehicle.

{¶6}　During the inventory search, officers recovered the following items from the vehicle:[1] (1) a loaded .45-caliber Hi-Point semiautomatic handgun in the glove compartment; (2) a red cooler on the middle bench seat containing crack cocaine, marijuana, two digital scales, a marijuana grinder, a tied-off sandwich bag containing what appeared to be crack cocaine, and tiny plastic baggies; (3) an open bottle of Hennessy cognac and an unopened can of beer on the middle bench seat; (4) an open bottle of Hennessy cognac underneath the front passenger seat; and (5) a black Kyocera cell phone between the driver's seat and front passenger seat.

---

[1] Officer Rini explained that the vehicle was a minivan with a front driver's seat and passenger seat, a middle bench seat, and a rear bench seat.

**{¶7}** Officer Rini cited appellant for (1) OVI, in violation of R.C. 4511.19(A)(2)(a), (2) OVI, in violation of R.C. 4511.19(A)(1)(e), (3) failure to reinstate license, in violation of R.C. 4510.21, (4) driving under suspension, in violation of R.C. 4510.11, and (5) driving under a twelve-point suspension, in violation of R.C. 4510.037(J). In Cleveland Heights Municipal Court, appellant pled guilty to having physical control of a vehicle while under the influence, in violation of R.C. 4511.194.

**{¶8}** In Cuyahoga C.P. No. CR-13-577863-A, the Cuyahoga County Grand Jury returned a nine-count indictment charging appellant with: (1) trafficking, a fourth-degree felony in violation of R.C. 2925.03(A)(2); (2) drug possession, a fifth-degree felony in violation of R.C. 2925.11(A); (3) trafficking, a third-degree felony in violation of R.C. 2925.03(A)(2); (4) drug possession, a third-degree felony in violation of R.C. 2925.11(A); (5) possessing criminal tools, a fifth-degree felony in violation of R.C. 2923.24(A); (6)-(7) carrying concealed weapons, fourth-degree felonies in violation of R.C. 2923.12(A)(2); (8) having weapons while under disability, a third-degree felony in violation of R.C. 2923.13(A)(3); and (9) improperly handling firearms in a motor vehicle, a fourth-degree felony in violation of R.C. 2923.16(B). Counts 1 through 4 contained one-year firearm specifications, and all counts contained forfeiture specifications. Appellant pled not guilty to the indictment. The trial court declared appellant to be indigent and assigned a public defender as counsel.

**{¶9}** During pretrial proceedings, appellant moved to suppress the evidence recovered from his vehicle at the time of his arrest. After conducting a hearing, the trial court denied appellant's motion to suppress the evidence.

**{¶10}** On July 27, 2015, the matter proceeded to trial. Counts 1 through 7 and 9 were tried to the jury; Count 8 was tried to the trial court. At the close of trial, the jury found

appellant not guilty of Counts 1 through 7 and 9. The trial court found appellant guilty of Count 8. The trial court ordered a presentence investigation report and set the matter for sentencing. The trial court sentenced appellant to community control for a period of one and one-half years.

{¶11} Appellant filed the instant appeal assigning two errors for review:

I. The trial court's denial of the motion to suppress was contrary to established Eighth District Precedent.

II. The bench trial for, and conviction of the appellant of having weapons while under disability was a clear violation of appellant's constitutional rights to be free from double jeopardy and his right to a jury trial.

## II. Law and Analysis

### A. Motion to Suppress

{¶12} In his first assignment of error, appellant argues that the trial court erred by denying his motion to suppress the evidence recovered at the time of his arrest. Specifically, appellant contends that (1) the officers did not have a reasonable, articulable suspicion that appellant engaged in criminal activity to justify removing him from the vehicle, (2) the officers violated Cleveland Heights Ordinances ("CHO") 303.11 by towing his vehicle, and (3) the officers illegally searched the vehicle without a warrant.

### 1. Standard of Review

{¶13} This court reviews a decision on a suppression motion under a mixed standard of review. "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility." *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994). The reviewing court must accept the trial court's findings of fact in ruling on a motion to suppress if the findings are supported by competent, credible evidence. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797

N.E.2d 71, ¶ 8.   With respect to the trial court's conclusion of law, the reviewing court applies a de novo standard of review and decides whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

## 2. Initial Encounter

{¶14} Appellant does not dispute that the officers had probable cause to arrest him for OVI after smelling alcohol on his breath and administering field sobriety tests.   Instead, appellant argues that because the officers did not suspect that he was engaged in criminal activity, they did not have the right to remove him from the vehicle and detain him.   Appellant appears to argue that everything that occurred after the illegal seizure is inadmissible.

{¶15}   The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them, per se, unreasonable unless an exception applies.   *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).   An investigative stop, as set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), is a common exception to the Fourth Amendment warrant requirement.   Under *Terry*, both the stop and seizure must be supported by a reasonable suspicion of criminal activity.   The state must be able to point to specific and articulable facts that reasonably suggest criminal activity "may be afoot."   *Terry* at 9.   Inarticulable hunches, general suspicion, or no evidence to support the stop is insufficient as a matter of law.   *State v. Smith*, 8th Dist. Cuyahoga No. 89432, 2008-Ohio-2361, _ 8.

{¶16} A traffic offense meets the requirements under *Terry*, constituting reasonable grounds for an investigative stop.   *State v. Davenport*, 8th Dist. Cuyahoga No. 83487, 2004-Ohio-5020, ¶ 16, citing *State v. Carlson*, 102 Ohio App.3d 585, 596, 657 N.E.2d 591 (9th Dist.1995).   However, the scope of a detention "must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop."

*Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

**{¶17}** When a law enforcement officer, during a valid investigative stop, ascertains reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual. *State v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762 (1997). *Accord State v. Dieckhoner*, 8th Dist. Cuyahoga No. 96694, 2012-Ohio-805, ¶ 15. An officer may expand the scope of the stop and may continue to detain the vehicle without infringing on the Fourth Amendment "if during the scope of the initial stop an officer encounters additional specific and articulable facts which give rise to a reasonable suspicion of criminal activity beyond that which prompted the stop,* * * for as long as the new articulable and reasonable suspicion continues." *State v. Waldroup*, 100 Ohio App.3d 508, 513, 654 N.E.2d 390 (12th Dist.1995).

**{¶18}** In the instant matter, it is undisputed that appellant violated the overnight parking ban set forth in CHO 351.09. CHO 351.09 provides, in relevant part, "[n]o person * * * shall park any vehicle on any street in the City between the hours of 3:00 a.m. and 6:00 a.m." Appellant argues that CHO 303.11 authorized the officers to issue a parking violation notice. However, appellant argues that the officers' observations did not warrant further investigation into the matter and that the officers did not have the right to remove him from the vehicle. We disagree.

**{¶19}** Officer Rini explained that he pulled up to the vehicle in which appellant was sitting because the car was illegally parked, the driver's door was ajar, and the vehicle's engine was running. Officer Rini testified that before he approached the vehicle, he ran the vehicle's license plates and determined that the vehicle's registered owner was a female. Furthermore, before approaching the vehicle, Officer Rini contacted dispatch and requested that another unit

meet him at the scene to check on the vehicle. Officer Rini explained that he initially approached the vehicle before the additional unit arrived and observed appellant sleeping in the driver's seat. Officer Rini testified that the keys were in the ignition, the car was in park, the engine was running, the dashboard lights were on, and he heard music coming from the vehicle. Officer Rini testified that based on his initial observations, he "didn't know if the person in the vehicle was alive or in need of medical assistance or simply sleeping."

{¶20} Officer Rini testified that Officer Wolske arrived on the scene and that they attempted to wake appellant by tapping him on the shoulder, speaking to him, shining flashlights inside the vehicle, and banging on the door. The officers were able to wake appellant after two to three minutes. When appellant woke up, he immediately grabbed the driver's door and attempted to close it. Appellant informed the officers that he was "good" and "fine." Appellant attempted to close the driver's door two more times, but Officer Rini prevented him from doing so. Officer Rini explained why he prevented appellant from closing the door: "I didn't know who [the individual] was, what he was doing in that vehicle, if he was going to attempt to drive away. I didn't know if he needed medical assistance at that point."

{¶21} Officer Rini testified that when appellant woke up, "[h]e appeared, in the way he was talking, disoriented, wasn't sure where he was." Officer Rini explained that he asked appellant if he knew where he was and that appellant said "Caledonia Avenue" when he was in fact parked on Greyton Road. Officer Rini testified that he asked appellant for his identification, but that appellant would not provide it to him. Officer Rini testified that he removed appellant from the vehicle, explaining, "I didn't know if he was the operator of the vehicle, if he was in there attempting to steal things or take anything from the vehicle. I had asked him to identify himself and he hadn't. I felt for — I didn't want him attempting to drive

away in the vehicle, so it was easier for me to get him out of the vehicle and speak with him."

**{¶22}** Officer Rini testified that he removed appellant from the vehicle because he was concerned about appellant's health and well-being, appellant refused to provide identification to the officers, and he did not want appellant to attempt to drive away from the officers.

**{¶23}** Following a hearing on appellant's motion to suppress the evidence, the trial court concluded:

> The parking violation alone gave Officer Rini justification to investigate [appellant's] behavior and to order him out of the vehicle.
>
> * * *
>
> The testimony during the suppression hearing was that Officer Rini observed [appellant's] vehicle parked illegally on Greyton Road. The vehicle was idling, and the front driver's side door was open.
>
> Officer Rini approached and saw [appellant] sleeping in the driver's seat and that [appellant] was unresponsive. Both officers attempted to wake [appellant] but were unsuccessful for two to three minutes.
>
> When [appellant] did awake, he attempted to close the door, telling officers, "I'm good." He did this several times.
>
> Officer Rini stated that he prevented [appellant] from closing the door and stated that he was concerned for [appellant's] safety and the safety of the public.
>
> * * *
>
> [I]t just belies credibility that an officer would see a running vehicle at 5:00 a.m. in the morning, parked illegally, with the driver sleeping, and the driver's front door open, and that the officer simply issue a citation and move on.
>
> Further investigation in this case was warranted. I think it was necessary. And based on this, I find that Officer Rini had probable cause to escort [appellant] from the vehicle.

**{¶24}** After thorough review, we find that the trial court's findings are supported by competent and credible evidence in the record. The evidence shows that Officer Rini observed

the parking violation and this served as a lawful basis to stop the vehicle. Officer Rini further testified that he observed appellant in the front seat and that he did not know whether he "was alive or in need of medical assistance or simply sleeping." When the officers were able to wake appellant, he appeared to be disoriented and did not know what street he was on. Officer Rini testified that he asked appellant for his identification, but that appellant would not provide it to him. Furthermore, the officers testified that appellant tried to close the vehicle's front driver's door three times and that the vehicle was running. Based upon the totality of the circumstances, the officers' observations created reasonable and articulable suspicion that criminal activity was afoot, justifying further investigation and the detention of appellant.

{¶25} Once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle, even if the officer does not have reasonable suspicion of criminal activity. *See Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *State v. Hoskins*, 8th Dist. Cuyahoga No. 80384, 2002-Ohio-3451, ¶ 14; *State v. Travis*, 8th Dist. Cuyahoga No. 98420, 2013-Ohio-581, ¶ 14. Thus, even if appellant had not appeared to be disoriented, refused to provide his identification to the officers, or not attempted to close the driver's door, the officers were justified in ordering him to exit the vehicle. *See Hoskins* at ¶ 14.

{¶26} In support of his argument that the trial court erred by denying his motion to suppress, appellant directs this court to *State v. Medlar*, 93 Ohio App.3d 483, 638 N.E.2d 1105 (8th Dist.1994). In *Medlar*, a North Olmsted police officer observed a vehicle illegally parked at Great Northern Mall. When the officer observed the parking violation, the vehicle was unoccupied. However, rather than writing the parking citation and leaving it on the vehicle, the officer waited for the driver to return so that he could personally serve him with the parking

citation. Defendant-appellant returned to the illegally parked vehicle and began to drive away. The officer stopped appellant, administered field sobriety tests, and placed him under arrest for driving under the influence of alcohol.

{¶27} On appeal, appellant challenged the trial court's denial of his motion to suppress the evidence, arguing that the parking violation did not justify the officer's *Terry* stop. This court reversed the trial court's judgment, finding that the officer's investigatory stop was unwarranted because "[t]he parking violation had been completed before [appellant] entered his vehicle, therefore, there was nothing for [the officer] to investigate." *Id.* at 487. This court emphasized that the officer was not able to point to specific and articulable facts that reasonably warranted an investigatory stop of appellant. This court concluded that "[t]he 'totality of the circumstances' [did] not demonstrate [appellant] engaged in criminal activity except for the illegal parking for which the officer could or should have simply issued a citation and placed it on the windshield." *Id.* at 491.

{¶28} Appellant's reliance on *Medlar* is misplaced. Officer Rini testified that when an *unoccupied* vehicle is illegally parked, he ordinarily leaves a parking ticket on the windshield. However, unlike *Medlar*, the vehicle was not unoccupied when Officer Rini observed the parking violation. Furthermore, unlike *Medlar*, Officer Rini's observations upon approaching the vehicle, as outlined above, warranted further investigation.

{¶29} Appellant further suggests that a police officer may only order an occupant to exit a vehicle when the driver committed a traffic violation, and that officers may not order an individual who committed a parking violation out of a vehicle. In *State v. Jones*, 8th Dist. Cuyahoga No. 92820, 2009-Ohio-5701, an East Cleveland police officer approached a vehicle that was parked in violation of a city parking ordinance. On appeal, defendant-appellant

challenged the trial court's denial of his motion to suppress the evidence, arguing that the officer did not have the right to detain him because he only observed a parking violation, not a criminal violation. This court affirmed the trial court's judgment, concluding that the officer "had probable cause to approach [appellant] because he observed [appellant] violating an East Cleveland parking ordinance. The fact that it was a parking violation, and not a traffic violation, is a distinction without a difference." *Id*. at _ 32, citing *State v. Nevins*, 2d Dist. Montgomery No. 15968, 1997 Ohio App. LEXIS 1839 (May 9, 1997) (police officer observed a parking violation and thus, had probable cause to stop a vehicle). In the instant matter, we find that the officers had probable cause to approach appellant because they observed him parked in violation of CHO 351.09. Furthermore, we find that the officers' further investigation and detention of appellant were warranted based on their observations after approaching the vehicle.

{¶30} Based on the foregoing analysis, we find that the officers lawfully seized appellant.

### 3. Tow

{¶31} Appellant argues that the officers violated CHO 303.11 by towing the vehicle. Specifically, appellant argues that CHO 303.08(b)(4) required the officers to inquire whether a licensed driver could move the vehicle before ordering a tow.

{¶32} CHO 303.08(b) provides, in relevant part, "[p]olice officers are authorized to provide for the removal and impoundment of a motor vehicle when such vehicle is in violation of subsections (b)(1) * * * and if the conditions outlined in subsection (b)(4) hereof are not satisfied." CHO 303.08(b)(1) authorizes police officers to remove and impound any vehicle that "is left unattended due to the removal of an ill, injured or arrested operator." CHO 303.08(b)(4) provides:

No tow or impoundment authorized by [CHO 303.08(b)] shall be undertaken and completed unless:

A. The operator of the vehicle is unwilling or unable to remove or provide for the removal of the vehicle in question.

B. Satisfactory arrangements are made for removal of such vehicle and the vehicle is not actually removed within three hours from such time.

**{¶33}** On the other hand, the state argues that the vehicle was lawfully impounded pursuant to CHO 303.08(a)(5). CHO 303.08(a)(5) provides that "[p]olice officers are authorized to provide for the removal and impounding of a vehicle * * * [that] has been used in or connected with the commission of a felony or misdemeanor of the first degree." In the instant matter, appellant was arrested for OVI, a first-degree misdemeanor in violation of R.C. 4511.19(A)(1)(a).

**{¶34}** The trial court concluded:

[appellant's] vehicle was lawfully impounded pursuant to the City of Cleveland Heights ordinance 303.08[.]

* * *

The Cleveland Heights ordinance 303.08 Subsection (a)(5), permits impounding a vehicle when it has been used in or connected with the commission of a felony or a misdemeanor of the first degree.

And although [defense counsel] and [appellant], you cite to other sections of the code which requires further action of the part of the officers before impounding a vehicle, such as contacting somebody else to remove the vehicle, [appellant] was arrested, and according to what I found so far, lawfully so, for an OVI, which is a first degree misdemeanor.

**{¶35}** After reviewing the record, we conclude that it contains competent and credible evidence to support the trial court's findings.

**{¶36}** Officer Rini explained that he ordered the vehicle to be towed because (1) appellant used the vehicle in the commission of a crime, specifically operating a vehicle while

intoxicated, a first-degree misdemeanor, (2) he did not believe that appellant was able to drive the vehicle away based on his determination that appellant "was appreciably impaired [and] unable to operate a motor vehicle," and (3) the Cleveland Heights Police Department does not leave parked or abandoned vehicles on the side of the road. Officer Rini acknowledged that he did not ask appellant if he could call somebody to move the vehicle. However, Officer Rini knew that appellant was not the registered owner of the vehicle when he ordered the tow. Furthermore, although Officer Rini had identified the vehicle's registered owner by running the license plates, he testified that he did not attempt to contact the owner before towing the vehicle because he did not have the owner's phone number.

{¶37} For all of the foregoing reasons, we find that the officers lawfully impounded the vehicle. CHO 303.08(a)(5) expressly authorized the officers to remove and impound the vehicle after arresting appellant for OVI, a first-degree misdemeanor. Furthermore, we find no merit to appellant's argument that the officers violated CHO 303.08(b)(4) by towing the vehicle. It is undisputed that appellant was not the owner of the vehicle. Officer Rini determined that appellant was disoriented and "appreciably impaired." Under these circumstances, we cannot say that the tow was unlawful because the officers did not give appellant an opportunity to make arrangements for the vehicle to be removed.

{¶38} Accordingly, we find that the vehicle in which the officers found appellant was lawfully towed and impounded.

### 4. Inventory Search

{¶39} Appellant argues that the officers "illegally search[ed] [appellant's] vehicle in a manner which far exceeded the scope of any 'inventory search[.]'" Specifically, appellant claims that Officer Wolske unlawfully searched the glove compartment "without any proof of

evidence that the glovebox was unlocked." Appellant's argument is entirely unsupported by the record.

{¶40} Inventory searches are a well-defined exception to the warrant requirement of the Fourth Amendment. *State v. Mesa*, 87 Ohio St.3d 105, 108, 717 N.E.2d 329 (1999). Inventory searches involve administrative procedures conducted by law enforcement officials and are intended to protect an individual's property while it is in police custody, protect the police against claims of lost, stolen, or vandalized property, and protect police from dangerous instrumentalities. *Id*. at 109. Because inventory searches are administrative caretaking functions unrelated to criminal investigations, the policies underlying the Fourth Amendment warrant requirement are not implicated. *Id*. Rather, the validity of an inventory search of a lawfully impounded vehicle is judged by the Fourth Amendment's standard of reasonableness. *Id*. "To satisfy the requirements of the Fourth Amendment, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine." *State v. Hathman*, 65 Ohio St.3d 403, 407, 604 N.E.2d 743 (1992).

{¶41} The trial court concluded:

I find that the inventory search conducted by the arresting officers, which is an exception to the warrant requirement, was lawful and that the contents recovered during that search are admissible as evidence in this case.

At the time the search was conducted, [appellant's] vehicle was lawfully impounded pursuant to the City of Cleveland Heights ordinance 303.08, and the inventory search was conducted to Cleveland Heights vehicle inventory procedure.

The Cleveland Heights ordinance 303.08 Subsection (a)(5), permits impounding a vehicle when it has been used in or connected with the commission of a felony or a misdemeanor of the first degree.

And although [defense counsel] and [appellant], you cite to other sections of the

code which requires further action of the part of the officers before impounding a vehicle, such as contacting somebody else to remove the vehicle, [appellant] was arrested, and according to what I found so far, lawfully so, for an OVI, which is a first degree misdemeanor.

So I find that the search was conducted in compliance with the city's inventory procedure which allowed the officers to search the unlocked areas of the vehicle and open closed containers.

{¶42} After reviewing the record, we conclude that it contains competent and credible evidence to support the trial court's findings. In *State v. Semenchuk*, 122 Ohio App.3d 30, 701 N.E.2d 19 (8th Dist.1997), this court held that "testimony to the effect that the officer was adhering to standard police procedures" is sufficient in demonstrating that the inventory search was lawful. *Id*. at 40.

{¶43} In the instant matter, there is ample evidence that the decision to conduct the inventory search of the vehicle was made in good faith and in accordance with the city of Cleveland Heights' standardized procedure regarding such searches. Officer Rini testified that he conducted a vehicle inventory with Officer Wolske after ordering the tow. Officer Rini stated that the Cleveland Heights Police Department has an established policy for conducting vehicle inventories, and that he followed the procedure when he conducted the inventory search of appellant's car. Officer Rini explained that "we checked any unlocked compartments; the glove box, the trunk, areas underneath the driver's seat. * * * on the driver's side door, the pocket in the door. In the sun visors. Any boxes that are — packages that are in the vehicle." Officer Rini testified that the department's policy authorizes officers to search closed containers but not locked containers. Officer Rini stated that if something is locked inside a vehicle, "you list it on the inventory as a locked container or a locked glove box," and that officers are required to obtain a search warrant before searching the locked compartments or containers.

{¶44} Officer Rini explained that he searched the back seat of the vehicle and Officer

Wolske searched the front seat of the vehicle. Officer Rini testified that Officer Wolske told him that the vehicle's glove compartment was unlocked. Officer Rini stated that he observed a red cooler in the backseat. Even though the cooler was closed, Officer Rini explained that he opened it because it was unlocked.

{¶45} Appellant suggests that the officers should have locked the vehicle and obtained a search warrant before searching the vehicle. However, Officer Rini testified that the department's procedure does not call for such a course of action, explaining that "[w]e would have to put an officer sitting at that vehicle. You can't leave the vehicle unattended and come back with a search warrant to search it. [A] [w]indow could be smashed or the door could be forced open and anything that was in that vehicle could have been taken at that point."

{¶46} Accordingly, the record establishes that the officers conducted the inventory search of the vehicle in a lawful and reasonable manner, complying with the department's established inventory procedure.

{¶47} Furthermore, appellant's assertion that the vehicle's glove compartment was locked is entirely unsupported by the record. The trial court did not find appellant's version of the events to be credible, concluding that "[a]lthough there was an allegation that the glove compartment was locked, Officer Rini testified that it was unlocked, and this testimony was not contradicted by other evidence." As a reviewing court, we defer to the trial court's credibility determinations. The credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact, who observed the witness in person. *State v. Dunbar*, 8th Dist. Cuyahoga No. 99740, 2014-Ohio-383, _ 18, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

{¶48} Based on the foregoing analysis, we find that the officers' inventory search was

lawful.

{¶49} For all of the foregoing reasons, the trial court's findings regarding (1) the officers' initial encounter and detention of appellant, (2) the tow and impound of the vehicle, and (3) the inventory search of the vehicle are supported by competent, credible evidence. Furthermore, following our de novo review of the trial court's conclusions of law, we find that the court's findings satisfy the applicable legal standards. Accordingly, the trial court did not err in denying appellant's motion to suppress.

{¶50} Appellant's first assignment of error is overruled.

### B. Having Weapons While Under Disability Conviction

{¶51} In his second assignment of error, appellant argues that his conviction for having weapons while under disability violated his protections against double jeopardy, was barred by the doctrine of collateral estoppel, and was inconsistent with the jury's verdict.

### 1. Double Jeopardy

{¶52} Appellant contends that the trial court's verdict violated his double jeopardy protections. In response, the state argues that double jeopardy is not implicated in the instant matter because this case does not involve successive prosecutions, but rather a single, multi-count proceeding before different fact finders.

{¶53} Double jeopardy was established by the Fifth Amendment to the Constitution of the United States, which states: "No person shall * * * be subject for the same offence to be twice put in jeopardy of life or limb * * * ." The Fifth Amendment has been made applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). It is well established that the Double Jeopardy Clause protects against successive prosecutions for the same offense after acquittal or conviction. *State v.*

*Edwards*, 8th Dist. Cuyahoga Nos. 94568 and 94929, 2011-Ohio-95, ¶ 17, citing *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

**{¶54}** In the instant matter, it is undisputed that the appellant was not subjected to successive prosecutions for the same offenses. All of the nine counts in this case were tried as part of a single prosecution. Accordingly, we find that double jeopardy is inapplicable.

### 2. Collateral Estoppel

**{¶55}** Appellant contends that his conviction for having weapons while under disability was barred by the doctrine of collateral estoppel. Specifically, appellant argues that the jury's verdict finding him not guilty of the offenses of possessing criminal tools, carrying concealed weapons, and improperly handling firearms in a motor vehicle "factually negated elements of proof necessary to establish [his conviction for] having weapons while under disability." Appellant further suggests that his conviction was barred by the collateral estoppel component of double jeopardy because the jury found him not guilty of the offenses of possessing criminal tools, carrying concealed weapons, and improperly handling firearms in a motor vehicle *before* the trial court found him guilty of having weapons while under disability.

**{¶56}** The United States Supreme Court held that the rule of collateral estoppel is embodied by the Fifth Amendment guarantee against double jeopardy. *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

> Collateral estoppel is the doctrine that recognizes that a determination of facts litigated between two parties in a proceeding is binding on those parties *in all future proceedings*. Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.["]

(Emphasis added.) *State v. Lovejoy*, 79 Ohio St.3d 440, 443, 683 N.E.2d 1112 (1997), quoting *Ashe* at 443.

{¶57} As outlined above, the instant matter neither involves successive prosecutions nor future proceedings. Nevertheless, appellant argues that the doctrine of collateral estoppel can be implicated in a single proceeding, directing this court to *Galloway v. Maryland*, 371 Md. 379, 809 A.2d 653 (2002).

{¶58} In *Galloway*, the defendant-appellant was charged, in relevant part, with use of a handgun in the commission of a felony or crime of violence, carrying a handgun, and two counts of possession of a firearm after having been previously convicted of a crime. *Id*. at 383. The use of a handgun in the commission of a felony or crime of violence and carrying a handgun counts were tried to a jury, and the jury found appellant not guilty of the offenses. The possession of a firearm after having been previously convicted of a crime counts were tried to the trial court, and the trial court found appellant guilty of the offenses. On appeal, appellant raised two issues: (1) whether the trial court's verdict contradicting the jury's acquittal on the issue of possession was barred under the Double Jeopardy Clause of the Fifth Amendment and Maryland common law, and (2) whether the trial court erred by rendering an inconsistent verdict. *Id*. at 384-385. The appellate court explained the inconsistent verdicts regarding the issue of possession:

> At a given point in time, the jury held that appellant did not possess the handgun. The trial court necessarily held that, at the same given point in time, appellant, a felon, was in possession of the same handgun.
>
> * * *
>
> In the present case, there is only one issue, one "scenario." Appellant, at the point in time at issue, was either carrying the weapon or he was not. The jury found that he was not carrying it; subsequently, based on the identical evidence presented only once in the same trial, the judge found that, at the identical point in

time, he was. * * * [T]he judge's verdict in the case sub judice effectively nullifies the jury's verdict. It is, without question, inconsistent.

*Id*. at 400-402.

{¶59} The appellate court reversed appellant's convictions, concluding that "[t]he trial court should have honored the jury's verdict and not rendered inconsistent verdicts. Upon receiving the jury's verdicts, the trial judge should have dismissed [the possession of a firearm after having been previously convicted of a crime counts]." *Id*. at 416. However, in reversing the trial court's judgment, the court noted that it relied on Maryland common law principles, not on the constitutional issue of double jeopardy or collateral estoppel. *Id*. at 394.

{¶60} In the instant matter, the defense's theory of the case was that neither the vehicle nor the firearm belonged to appellant and that appellant had no knowledge that the firearm was in the vehicle's glove compartment. Appellant argues that because the jury concluded that the state failed to prove that he *knowingly* carried, had, or transported the firearm recovered from the vehicle's glove compartment, the trial court was precluded from concluding that he *knowingly* had or possessed the firearm for the purposes of the offense of having weapons while under disability.[2] After thorough review, we find that the jury's acquittal did not preclude the trial court's verdict finding appellant guilty of having weapons while under disability. For the reasons that follow, Ohio law does not require acquittal on the separate charge of having weapons while under disability based on the jury's verdict. Accordingly, appellant's reliance on *Galloway* is misplaced.

### 3. Inconsistent Verdicts

---

[2] Appellant's argument would be appropriate in a sufficiency challenge rather than an alleged double jeopardy or collateral estoppel violation. However, because appellant fails to assign sufficiency of the evidence as error, it is not properly before this court for review. *See* App.R. 16(A)(7).

{¶61} Appellant contends that the trial court's verdict was inconsistent with, and contradicted by, the jury's verdict. In response, the state argues that the conviction should not be reversed on inconsistency grounds, emphasizing that having weapons while under disability is a separate and distinct offense from the offenses on which the jury returned a verdict of not guilty.

{¶62} The Supreme Court of Ohio has held that the counts of an indictment "are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, *but only arises out of inconsistent responses to the same count*." (Emphasis added.) *Lovejoy*, 79 Ohio St.3d 440, 683 N.E.2d 1112, at paragraph one of the syllabus. The court further explained that "[d]ouble jeopardy and collateral estoppel do not apply where the inconsistency in the responses arise out of inconsistent responses to different counts, not out of inconsistent responses to the same count." *Id*. at paragraph two of the syllabus.

{¶63} In *State v. Brown*, 8th Dist. Cuyahoga No. 89754, 2008-Ohio-1722, defendant-appellant was charged with attempted murder, felonious assault, and having a weapon while under disability. All counts were tried to a jury except for the count charging the appellant with having a weapon while under disability, which was tried to the bench. The jury acquitted the appellant of attempted murder and felonious assault, and the trial court found him guilty of having a weapon while under disability.

{¶64} On appeal, the appellant challenged his conviction for having a weapon while under disability, arguing that the trial court's verdict was inconsistent with the jury's acquittal on the charges of attempted murder and felonious assault. This court rejected appellant's arguments, concluding, in relevant part:

> In Ohio, inconsistency requiring acquittal does not arise out of a jury's inconsistent responses to different counts, but only arises out of inconsistent

responses to the same count. * * * This is so because the several counts of an indictment are independent, and a verdict responding to a designated count will be construed in the light of the count designated, and no other. * * * In contrast with civil cases, consistency between verdicts on several counts of a criminal indictment is unnecessary and, where the defendant is convicted on one or some counts and acquitted on others, the conviction will generally be upheld, irrespective of its rational incompatibility with the acquittal.

In *State v. Hunter*, [2d Dist.] Montgomery No. 13614, 1993 Ohio App. LEXIS 3655 [(July 23, 1993)], the court found the defendant guilty of having a weapon while under a disability, and the jury was unable to reach a verdict on a separate charge of carrying a concealed weapon. On appeal, the court held that the two offenses contained separate elements; therefore, the verdicts did not present a logical inconsistency. *Id.* The court further noted that "even had [the defendant] been found not guilty by the jury on the charge of carrying a concealed weapon, that would not require acquittal on the separate charge of having a weapon under disability." *Id.* * * *

Similarly, we do not find that the jury's acquittal on the charges of attempted murder and felonious assault are inconsistent with the trial court's determination of guilt on having a weapon while under a disability. These three offenses are separate charges, each requiring proof beyond a reasonable doubt on a different set of elements * * *.

*Id.* at ¶ 27-29.

{¶65} In *State v. Webb*, 10th Dist. Franklin No. 10AP-2289, 2010-Ohio-6122, defendant-appellant challenged the trial court's guilty verdict for having weapons while under disability. Appellant argued that the trial court's verdict was inconsistent with the jury's inability to reach a verdict on the count of improperly handling firearms in a motor vehicle, and that his conviction was barred by double jeopardy and collateral estoppel. Furthermore, appellant argued that the improper handling and having weapons while under disability counts were "effectively the same count." *Id.* at ¶ 60. The appellate court rejected appellant's arguments, concluding that there was no basis requiring reversal of appellant's conviction for having weapons while under disability. *Id.* at ¶ 63.

{¶66} In *State v. Wingfield*, 2014-Ohio-2053, 11 N.E.3d 732 (8th Dist.), the jury acquitted defendant-appellant of carrying concealed weapons and tampering with evidence, and the trial court found him guilty of having weapons while under disability. On appeal, appellant argued that his conviction for having weapons while under disability was not supported by sufficient evidence.[3] This court vacated appellant's conviction, concluding:

> An appellate court is not permitted to speculate about the reason for the inconsistency when it determines the validity of a verdict. *State v. Morris*, 8th Dist. Cuyahoga No. 94923, 2011-Ohio-824, [¶ 12,] citing *State v. Trewartha*, 165 Ohio App.3d 91, 2005-Ohio-5697, 844 N.E.2d 1218, ¶16 (10th Dist). We conclude, without speculating, that the state failed to present sufficient evidence to prove beyond a reasonable doubt that Wingfield was guilty of having weapons while under disability. As such, Wingfield's motion for acquittal should have been granted.

*Id.* at ¶ 31.

{¶67} In the instant matter, we find that the jury and the trial court rendered inconsistent verdicts. The jury concluded that appellant did not knowingly carry, have, or transport the firearm for the purposes of carrying concealed weapons and improperly handling firearms in a motor vehicle. On the other hand, the trial court concluded that appellant did knowingly acquire, have, carry, or use the same firearm for the purposes of having weapons while under disability. However, under Ohio law, the inconsistency between the jury's and the trial court's verdicts does not require acquittal on the charge of having weapons while under disability.

{¶68} The inconsistent verdicts did not pertain to the same count, but rather to separate and distinct counts in the indictment. The counts in the indictment charging appellant with carrying concealed weapons, improperly handling firearms in a motor vehicle, and having

---

[3] As previously noted, appellant does not challenge his conviction for having weapons while under disability on sufficiency grounds. *See also State v. Smith*, 10th Dist. Franklin No. 14AP-33, 2014-Ohio-5443 (defendant-appellant challenged the trial court's verdict finding him guilty of having weapons while under disability on sufficiency and manifest weight grounds after the jury acquitted him of aggravated burglary, aggravated robbery,

weapons while under disability are independent, and the verdicts on the designated counts are construed in the light of the designated counts, and no other. *Browning v. State*, 120 Ohio St. 62, 165 N.E. 566 (1929). Each count of a multi-count indictment is deemed distinct and independent of all other counts, and thus inconsistent verdicts on different counts do not justify overturning a verdict of guilt. *See State v. Hicks*, 43 Ohio St.3d 72, 78, 538 N.E.2d 1030 (1989); *State v. Brown*, 12 Ohio St.3d 147, 465 N.E.2d 889 (1984), paragraph one of the syllabus. Consistency between verdicts on several counts of a criminal indictment is unnecessary, and where the defendant is convicted on one or some counts and acquitted on others the conviction will generally be upheld, *irrespective of its rational incompatibility with the acquittal*. *State v. Woodson*, 24 Ohio App.3d 143, 493 N.E.2d 1018 (10th Dist.1985).

{¶69} Accordingly, we find that the inconsistency between the jury's and the trial court's verdicts does not require reversal of appellant's conviction for having weapons while under disability.

{¶70} For all of the foregoing reasons, we find no merit to appellant's second assignment of error. Appellant's conviction for having weapons while under disability did not violate his protections against double jeopardy and was not precluded by the doctrine of collateral estoppel. Furthermore, we cannot say that the inconsistency between the jury's and the trial court's verdicts, rendered on separate and independent counts of the indictment, requires reversal of appellant's conviction. Thus, appellant's second assignment of error is overruled.

### III. Conclusion

{¶71} After thoroughly reviewing the record, we find that the trial court did not err by denying appellant's motion to suppress. Based on the totality of the circumstances, the officers

---

kidnapping, and felonious assault.)

(1) lawfully approached appellant's vehicle and seized appellant, (2) lawfully towed and impounded the vehicle after arresting appellant for OVI, and (3) lawfully conducted an inventory search of the vehicle before it was towed.

{¶72} We cannot say that appellant's conviction for having weapons while under disability requires reversal. The conviction neither violates appellant's protections against double jeopardy nor is precluded by the doctrine of collateral estoppel. Furthermore, the inconsistency between the jury's and the trial court's verdicts does not require reversal of appellant's conviction because the verdicts pertained to separate, distinct, and independent counts in the indictment.

{¶73} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

TIM McCORMACK, P.J., and
ANITA LASTER MAYS, J., CONCUR